Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**Swigart Law Group, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

*Attorneys for Plaintiff and The Putative Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TYLER MAGHONEY, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DOTDASH MEREDITH INC.,<br><br>Defendant. | Case No: 3:24-cv-02394-AJB-AHG<br><br>Assigned to the Hon. Anthony J. Battaglia, Courtroom 4A<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: July 31, 2025<br>Time: 2:00 p.m.<br>Courtroom: 4A<br><br>**ACTION FILED: DECEMBER 19, 2024** |

## Table of Contents

*I.* Introduction ........................................................................ 1

*II.* Statement of Facts ........................................................................ 2

*III.* Legal Standard ........................................................................ 4

*IV.* Argument ........................................................................ 5

*A.* Plaintiff Has Sufficiently Alleged Concrete Harm ........................................ 5

*B.* Invasion of Privacy (California Constitution) ........................................ 10
*1.* Legally Protected Privacy Interest ........................................ 10
*2.* Reasonable Expectation of Privacy ........................................ 11
*3.* Seriousness of Privacy Invasion ........................................ 11

*C.* California's Confidentiality of Medical Information act (California Civil Code § 56) ........................................ 12

*D.* California's Pen Register and Trap and Trace Law (Penal Code § 638.51) ........................................ 14

*E.* California's Invasion of Privacy Act (Penal Code § 631) ........................................ 17

*F.* The Federal Wiretap Act (18 U.S.C. § 2511) ........................................ 20

*G.* California's Computer Data Access and Fraud Act (Penal Code § 502 ........................................ 22

*H.* Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030) ........................................ 24

*I.* Federal Stored Communications Act (18 U.S.C. § 2701) ........................................ 25

*J.* Request to Strike ........................................ 26

*V.* Conclusion ........................................................................ 28

## Table of Authorities

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4
*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ....................4
*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ....................21
*Brown v. Mortensen*,
(2011) 51 Cal.4th 1052 ....................12
*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ....................13, 14
*Chapman v. Pier 1 Imports (US) Inc.*,
631 F.3d 939 ....................7
*Chubb Custom Insurance Company v. Space Systems/Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) ....................4
*Cousin v. Sharp Healthcare*,
702 F.Supp.3d 967 (S.D. Cal. 2023) ....................13
*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................7, 19
*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................22
*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ....................23
*Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*,
528 U.S. 167 (2000) ....................5
*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................... Passim
*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ....................10, 12
*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal.4th 1 (1994) ....................10, 11
*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................23
*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ....................6, 8, 26
*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................22

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................................17
*In re Horizon Healthcare Services, Inc. Data Breach Litigation*,
846 F.3d 625 (2017)...........................................................................................6
*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................25, 26
*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................23
*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................20
*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)........................................................16
*J.M. Illuminate Education, Inc.*,
103 Cal.App.5th 1125 ......................................................................................13
*Javier v. Assurance IQ*, LLC,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ..............................................18, 21
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)..........................................................................27
*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)..........................................................................27
*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........................................................22
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..........................................................................................5
*Matera v. Google, Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ..............................................7
*Maya v. Centex Corporation*,
658 F.3d 1060 (9th Cir. 2011)..........................................................................5
*MGIC Indem. Corp. v. Weisman*,
803 F.2d 500 (9th Cir. 1986)..........................................................................27
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)..............................................16
*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........................................................16
*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)............................................................................4
*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009)..........................................................................20
*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
676 F.3d 829 (9th Cir. 2012)............................................................................5
*Regents of University of California v. Superior Court*,
(2013) 220 Cal.App.4th 549 ..........................................................................12

*Reniger v. Hyundai Motor America*,
122 F.Supp.3d 888 (2015) ....................5
*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................18
*Saeedy v. Microsoft Corporation*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....................10
*Sexton v. Apple Studios LLC*,
110 Cal.App.5th 183 (2025) ....................10
*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................16
*Shulman v. Group W Prods., Inc.*,
18 Cal. 4th 200 (1998) ....................9
*Spokeo, Inc. v. Robins*,
578 U. S. 330 (2016) ....................9
*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ....................14
*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ....................20, 21
*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ....................1, 5, 9
*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................21
*United States v. Cooper*,
2015 WL 881578 (N.D. Cal. Mar. 2, 2015) ....................25
*United States v. Espudo*,
954 F.Supp.2d 1029 (S.D. Cal. 2013) ....................25
*United States v. Middleton*,
231 F.3d 1207 (9th Cir. 2000) ....................24
*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) ....................20
*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*,
135 F.3d 658 (9th Cir. 1998) ....................4
*Yoon v. Lululemon*,
549 F. Supp. 3d ....................18, 21
*Zarif v. Hwareh.com, Inc.*,
549 F. Supp. 3d ....................6-7, 17-19, 22

**Statutes**

18 U.S.C. § 1030 ....................4, 24
18 U.S.C. § 1030(a)(4) ....................24, 26
18 U.S.C. § 1030(c)(4)(A)(i)(I) ....................24

18 U.S.C. § 1030(e)(11) ....................24
18 U.S.C. § 1030(g) ....................24
18 U.S.C. § 2510(15) ....................25
18 U.S.C. § 2511 ....................3, 4, 20
18 U.S.C. § 2511(2)(d) ....................20
18 U.S.C. § 2701 ....................25
18 U.S.C. § 2701(a) ....................25
18 U.S.C. § 2701(c) ....................26
18 U.S.C. § 2710 ....................4
Cal. Civ. Code § 56.05(j) ....................12
Cal. Civ. Code § 56.10 ....................4
Cal. Penal Code § 502(c)(2) ....................22
Cal. Penal Code § 502(e)(1) ....................22
Cal. Penal Code § 631 ....................4, 20
Cal. Penal Code § 637.2 ....................17
Cal. Penal Code § 638.50(b) ....................14, 15
Cal. Penal Code § 638.50(c) ....................15
Cal. Penal Code § 638.51 ....................4, 15, 16, 17
California Civil Code § 56 ....................12
California Penal Code § 502 ....................4, 23
U.S. Const. art. III ....................5, 6

**Rules**

Fed. R. Civ. P. 12(d) ....................28
Fed. R. Evid. 201(b) ....................27
Federal Rule of Civil Procedure 12(b)(1) ....................4
Federal Rule of Civil Procedure 12(b)(6) ....................4, 28
Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure ....................4

## I. INTRODUCTION

Defendant Dotdash Meredith, Inc.'s ("Dotdash") Motion to Dismiss should be denied in its entirety. Plaintiff plausibly alleges that Dotdash unlawfully intercepted and transmitted sensitive, private health-related communications without consent to third parties, including Google, DoubleClick, and Facebook. Contrary to Defendant's assertions, Plaintiff has suffered a concrete, particularized injury sufficient to confer Article III standing under established Supreme Court and Ninth Circuit precedent. The unauthorized interception and disclosure of Plaintiff's confidential medical inquiries implicates core privacy harms historically recognized at law and squarely satisfies the requirements set forth in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

Plaintiff alleges concrete and particularized injuries sufficient for standing, including the unauthorized interception and disclosure of sensitive medical information and the loss of control over private health-related communications. These privacy invasions are traditionally recognized harms that independently satisfy Article III.

Plaintiff's claims are well-supported by detailed factual allegations demonstrating unauthorized interception of the contents of Plaintiff's communications while in transit, as required under state and federal law. Plaintiff's loss of control over deeply sensitive medical information independently supports standing and plausibility. Defendant's attempt to minimize its role as a health information service provider under ignores the reality that Dotdash actively invites consumers to seek out health-related guidance through its VerywellHealth platform. Plaintiff's allegations, accepted as true, state viable claims under the Wiretap Act, Stored Communications Act, Confidentiality of Medical Information Act, and related laws.

Furthermore, this Court should reject Defendant's attempt to resolve factual disputes at the motion to dismiss stage. Whether Plaintiff ultimately suffered additional downstream misuse of his private information is irrelevant; the injury here occurred the moment that Dotdash surreptitiously captured and transmitted Plaintiff's confidential browsing activity concerning health conditions of an intensely personal nature. The

communications at issue involve specific health-related search terms and website interactions protected under federal and California privacy statutes.

Finally, Defendant improperly attempts to circumvent Rule 12(b)(6) by submitting three declarations outside the pleadings in support of its motion. The Court should strike or disregard these materials entirely, as Defendant cannot sidestep the well-established rule that motions to dismiss must be decided based solely on the allegations of the complaint.

For these reasons, Defendant's motion to dismiss under Rule 12(b)(1) and 12(b)(6) should therefore be denied. In the alternative, Plaintiff should be granted leave to amend to address any technical pleading deficiencies identified by the Court.

## II. STATEMENT OF FACTS

Plaintiff brings this action in response to Dotdash's covert interception and monetization of sensitive user data, including private health-related search queries typed into the search bar on Defendant's website, VerywellHealth.com. FAC ¶¶ 1, 19, 27-28. As alleged in the First Amended Complaint, Dotdash deployed sophisticated tracking technologies—including its proprietary D/Cipher platform and third-party surveillance tools—that captured Plaintiff's confidential communications in real time and transmitted them to unauthorized third parties. FAC ¶¶ 31, 49, 51, 59-71, 92–95.

Plaintiff is a California resident who accessed VerywellHealth.com from within the state to search for information concerning private and stigmatized medical conditions. FAC ¶¶ 5, 28-30. Plaintiff specifically alleges that Dotdash systematically and continually conducted business in California, employs personnel within the state , and maintained and benefited from a regional advertising model targeting California consumers. FAC ¶¶ 12, 14, 17-19. These facts demonstrate purposeful engagement with the California forum and underscore the privacy interests implicated by Defendant's conduct. FAC ¶¶ 12, 14, 17-20.

Plaintiff visited Defendant's website, VerywellHealth.com, on two occasions: December 6, 2024, and December 13, 2024. FAC ¶ 28. While there, Plaintiff typed

specific search terms relating to a sexually transmitted infection.[1] *Id*. Plaintiff alleges that he received no disclosures from Dotdash about the collection or sharing of his data and reasonably expected that his health-related search activity on VerywellHealth.com would remain private and not be transmitted to third parties. FAC ¶¶ 32–33.

Plaintiff further alleges that Defendant, through its proprietary advertising platform, D/Cipher, intercepted Plaintiff's search terms, page navigation history, and metadata associated with his visit, including his IP address and device identifiers, and transmitted that information to third-party entities without his consent. FAC ¶¶ 31–32, 51. Moreover, Plaintiff alleges that D/Cipher is not a passive contextual ad tool as Defendant asserts, but an advanced fingerprinting and profiling mechanism designed to circumvent browser privacy protections and persistently track users across sessions and properties. FAC ¶¶ 31, 51, 65-83. Dotdash developed and deployed this platform to extract real-time behavioral data—including medical search terms—and to commercialize that data through targeted advertising. FAC ¶¶ 31, 49, 51, 63, 65-83.

Finally, Plaintiff alleges concrete harm resulting from these practices, including the invasion of privacy, loss of control over sensitive personal data, emotional distress, and increased risk of profiling and misuse and emotional distress. FAC ¶¶ 35–37, 142. These harms are directly traceable to Dotdash's decision to intercept and exploit Plaintiff's medical communications for financial gain, and emotional distress. FAC ¶¶ 35–37, and 142. These allegations are not hypothetical or conclusory—they describe specific privacy invasions involving protected health information and conduct actionable under federal and California law.

As a result of these unlawful and invasive practices, Plaintiff, who brings this action on behalf of himself and others similarly situated, asserts nine causes of action: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §

[1] Defendant makes much of the fact that Plaintiff lists these same terms in a publicly-available document in this case. Defendant, however, misses the point. No doubt, Plaintiff would prefer to keep his searches related to sexually transmitted infections private, but it is only because Defendant acted unlawfully that he is now forced to publicize those search terms to vindicate his rights.

2511(1); (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (3) violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10; (4) Invasion of Privacy under California's Constitution; (5) Violation of the California Computer Data Access and Fraud Act ("CDAFA"); (6) violation of California Penal Code § 502 for use of a pen register or trap and trace device, Cal. Penal Code § 638.51; (7) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (8) violation of the Stored Communications Act, 18 U.S.C. § 2710; and (9) violation of the Federal Wiretap Act, 18 U.S.C. § 2511.

## III. LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claims under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court construes the complaint in the light most favorable to the nonmoving party. *Chubb Custom Insurance Company v. Space Systems/Loral, Inc.,* 710 F.3d 946, 956 (9th Cir. 2013). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit Partnership v. Turner Broadcasting System, Inc*., 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556)). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To defeat a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), the Plaintiff must demonstrate that they have standing to invoke the

jurisdiction of the federal courts. This requires establishing three elements: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Reniger v. Hyundai Motor America*, 122 F.Supp.3d 888, 893 (2015), *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528, U.S. 167,180-81 (2000). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, as courts must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *Maya v. Centex Corporation*, 658 F.3d 1060, 1068 (9th Cir. 2011).

## IV. ARGUMENT

### A. PLAINTIFF HAS SUFFICIENTLY ALLEGED CONCRETE HARM

"The Constitution limits Article III federal courts' jurisdiction to deciding 'cases' or 'controversies.'" *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (quoting U.S. Const. art. III, § 2). The standing doctrine is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citation omitted).

Plaintiff alleges concrete and particularized injuries sufficient to establish Article III standing. FAC ¶¶ 23-28, 31, 34-37. The unauthorized interception and disclosure of Plaintiff's highly sensitive health-related search activity constitutes a clear invasion of privacy which constitutes disclosure of private information and intrusion upon seclusion, traditional harms long recognized at common law. *See TransUnion*, *supra*,

141 S. Ct. 2190, 2204. Courts have repeatedly held that unauthorized acquisition and sharing of private communications, particularly those concerning health conditions, creates a concrete injury that supports standing. *Smith v. American Pain and Wellness, PLLC, 747, F.Supp.3d 989, 1003* (2024) (the court found that the exposure of patients' personally identifiable information and protected health information to a third party following a data breach constituted a concrete injury for standing purposes under Article III. This was because the exposure bore some relationship to a well-established common law analog, as the disclosure of private information was an intangible harm traditionally recognized as providing a basis for suit); *In re Horizon Healthcare Services, Inc. Data Breach Litigation*, 846 F.3d 625, 635 (2017)( the court held that with privacy torts, the improper dissemination of information itself constitutes a cognizable injury for purposes of determining standing).

In addition to injury-in-fact, Plaintiff's allegations also satisfy the traceability and redressability prongs of Article III. Plaintiff's injuries flow directly from Defendant's deployment of tracking tools designed to intercept and monetize user communications, and a favorable judgment, whether injunctive relief or damages, would redress those injuries by deterring or remedying the unlawful conduct. FAC ¶¶ 23-25, 31-37, 183-188-190. Plaintiff's loss of control over his confidential health information and the resulting emotional distress further establishes concrete harm. FAC ¶ 36-37. The Ninth Circuit has recognized that the unauthorized collection and dissemination of personal data, even absent downstream misuse, satisfies the injury-in-fact requirement. *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599–600 (9th Cir. 2020). Plaintiff's detailed allegations of sensitive searches relating to sexually transmitted diseases and other personal medical concerns demonstrate the type of real, particularized injury that confers standing at the pleading stage.

The Southern District of California also recently confirmed that allegations of unauthorized tracking and transmission of sensitive medical browsing data can establish Article III standing. In *Zarif v. Hwareh.com, Inc.*, the court found that the plaintiff's

allegations that the defendant "enabled Facebook and other spyware companies to wiretap the residents' communications" and that it "knew specifically which users were in California" were sufficient to establish standing to sue for privacy violations at the pleading stage. See No. 23-cv-0565-BAS-DEB, 2025 WL 632318, at 8 (S.D. Cal. Feb. 13, 2025). The court rejected the argument that such data collection was too abstract or speculative to support a concrete injury, emphasizing that plaintiffs had plausibly alleged a personal privacy harm from real-time data interception and redirection to third parties.

Moreover,

> To the extent Plaintiffs allege an injury from the ongoing use of their intercepted data by Defendant and Salesforce, Plaintiffs have adequately alleged a "real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (US) Inc.*, 631 F.3d 939, 946; *see Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *19 (N.D. Cal. Sept. 23, 2016) (concluding that plaintiff has alleged a "real and immediate threat of repeated injury" from Google's ongoing analysis of data that was intercepted without the plaintiff's consent).

*D'Angelo v. FCA US, LLC,* 726 F. Supp. 3d 1179, 1194 (S.D. Cal. 2024).

Defendant's standing argument fundamentally misunderstands the nature of the privacy invasion at issue. Plaintiff does not allege that he voluntarily entered his name, address, or Social Security number into VerywellHealth.com; rather, Plaintiff alleges that Defendant surreptitiously captured Plaintiff's private health-related search terms — including searches for sexually transmitted diseases and other deeply personal medical conditions — in real time and transmitted them to third-party spyware companies. FAC ¶ 25-28, and 31.

Because the pace of technology moves so quickly, an analogy is helpful to put things in perspective. Imagine sitting at your laptop researching a serious illness on VerywellHealth.com that you had just been diagnosed with. Now, imagine a human observer standing over your shoulder. As you type in the name of the illness, the

observer tracks your search inquiry. As you navigate through the website, the observer tracks your mouse, eye, and hand movements. The observer collects this detailed information about you in real time that it immediately shares with advertisers — all for the sole purpose of selling goods and services tailored to you. This type of intrusive access to one's thoughts and behaviors is unprecedented in human history, and under no circumstance would we permit a human observer to monitor us like this.

And yet, this is how Dotdash's D/Cipher works. D/Cipher replaces the human observer and creates a contemporaneous digital version of the website's visitors based on their search inquiries and behaviors. FAC ¶¶ 52, 53. That version is tied to individuals in all but name, comprised of innumerable data points collected and shared with advertisers — again, in real time — for the sole purpose of influencing what people pay attention to and how they behave. FAC ¶¶ 65-68, and 70. Defendant would have us believe that this type of monitoring that we found unacceptable when performed by a human observer is now acceptable simply because a computer program is doing it. It is not.

Plaintiff's search terms, browsing behaviors, device characteristics, and IP address — captured contemporaneously and in real time — are combined and analyzed by sophisticated third-party data brokers to re-identify users without their knowledge or consent. FAC ¶¶ 24-25, 31, and 152-153; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (discussing *Zynga* and reasoning search "terms and the resulting URLs could divulge a user's personal interests, queries, and habits"). Defendant's platform was engineered not to respect user anonymity, but to erode it — secretly gathering users' most sensitive medical interests by way of their search terms and transmitting them to powerful advertising networks for profiling, targeting, and monetization. FAC ¶¶ 65, 70, 76, and 86.

Defendant's motion attempts to negate Plaintiff's harm by highlighting the differences between their tracking technology and other tracking technology. That is, Defendant argues that its tracking technology does not collect the same *type* of

information as the other tracking technology and that, therefore, Plaintiff's privacy concerns are unfounded. MTD at 9, 11-13. But this is not what the Supreme Court meant when it advised courts to "assess whether the alleged injury to the plaintiff has a '*close relationship*' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, *supra*, 594 U.S. at 424, citing *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016), italics added. Plaintiff here alleges that the privacy harms he has suffered via the Defendant's unauthorized collection and monetization of sensitive medical inquiries has a sufficiently "close relationship" to privacy harms arising from the collection of other online data to confer standing. FAC ¶¶ 34-37. Intrusion upon seclusion and unauthorized surveillance of private communications are precisely the types of historically grounded privacy torts recognized at common law. See *Shulman v. Group W Prods., Inc.,* 18 Cal. 4th 200, 231 (1998). The conduct alleged here—a third party intercepting real-time communications related to a person's health—falls squarely within this tradition.

Moreover, Defendant's claim that an IP address cannot identify a user ignores both technological realities and the purpose of the VerywellHealth spyware infrastructure. MTD at 7-10. Plaintiff plausibly alleges that his search terms and search activities, when combined with device fingerprinting, tracking pixels, session cookies, and cross-site identifiers, were specifically intended to enable user re-identification and precise advertising targeting. FAC ¶¶ 94-98. This is not speculative harm. The entire business model behind Defendant's deployment of third-party spyware is built on the ability to capture private health-related searches in real time, match them to users' digital profiles, and exploit that knowledge for advertising related to pharmaceuticals, sexual health treatments, and other intimate medical services. FAC ¶¶ 51, 52-54, 61, 63.

In sum, Plaintiff's allegations show a concrete, particularized privacy invasion that caused real-world informational harm — precisely the type of injury that supports

///

standing under Article III. Defendant's standing argument fundamentally misunderstands the nature of the privacy invasion at issue.

**B. INVASION OF PRIVACY (CALIFORNIA CONSTITUTION)**

**1. Legally Protected Privacy Interest**

The first essential element of a state constitutional cause of action for invasion of privacy is the identification of a specific, legally protected privacy interest." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 35 (1994). "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Id.*

Plaintiff here asserts a violation of his informational privacy. "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, *supra*, 7 Cal. 4th at 35. "Plaintiff need only establish a reasonable expectation of privacy under the circumstances. A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. Customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Sexton v. Apple Studios LLC*, 110 Cal.App.5th 183, 204 (2025).

Plaintiff properly alleges that individuals who conduct an online search of sensitive medical information reasonably expect that their search queries and personal activities will remain private. FAC ¶¶ 324, 329, 331. This is a commonly-held expectation in our society that is reflected by extensive legislation protecting health information. These highly sensitive search queries are notably distinct from the monitoring of employees' viewing of pornographic material in a workplace, as in *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 287 (2009), or generic searches on an internet browser, as in *Saeedy v. Microsoft Corporation*, 2023 WL 8828852 (W.D.

Wash. Dec. 21, 2023), or information inputted in a retail chatbot, as in *Valenzuela v. Kroger Co.*, No. 22-cv-6382-DMG (AGRx), ECF No. 55, pp. 1–5 (C.D. Cal. Mar. 13, 2025). Plaintiff's allegations are therefore sufficient to meet the first element of a constitutional invasion of privacy claim.

**2. Reasonable Expectation of Privacy**

"The second essential element of a state constitutional cause of action for invasion of privacy is a reasonable expectation of privacy on plaintiff's part." *Hill*, *supra*, 7 Cal.4th at 36. "[C]ustoms, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id.* "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. (*See, e.g.*, Rest.2d Torts, supra, § 652D, com. c ['The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.']" *Id.*

Plaintiff's claims involve search queries on a website that purports to be a source for "Trusted health information when you need it most. Know more, feel better." *See* www.verywellhealth.com, last accessed May 8, 2025. Defendant's website boasts 140+ medical reviewers and more than 500 medical topics covered on their website." FAC ¶¶ 1–2. By touting itself as a trusted source of medical information, Dotdash invites visitors to conduct highly sensitive health-related searches on its website — the "more" the visitors know, the "better" they will feel. *Id.* Dotdash then collects innumerable data points from the unknowing visitors, which it uses and shares with advertisers for monetization. FAC ¶¶ 19, 31, 51, 54, and 67. The misuse of users' private health queries most certainly violates widely accepted community norms. As such, these allegations are sufficient to meet the second element of a constitutional invasion of privacy claim.

**3. Seriousness of Privacy Invasion**

"Third, the plaintiff must show that the intrusion is so serious in 'nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.' "

*Hernandez*, *supra*, 47 Cal.4th at 287. Contrary to Defendant's assertion in its moving papers, the collection and monetization of people's highly sensitive health-related search queries is not routine. MTD at 6, 7, 9, and 10. Considering the state and federal laws prohibiting the unauthorized sharing of health-related information, there can be no dispute that Defendant's conduct is sufficiently serious to satisfy the third element of an invasion of privacy claim. Based on the foregoing, Defendant's motion to dismiss for lack of standing should be denied.

### C. CALIFORNIA'S CONFIDENTIALITY OF MEDICAL INFORMATION ACT (California Civil Code § 56)

The CMIA generally requires a health care provider to maintain medical information in a manner that preserves its confidentiality. (Civ. Code, § 56.101, subd. (a).) The CMIA " 'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider [and related entities][.]" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1070; *see also Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 553.) The CMIA defines "medical information" as "individually identifiable information" regarding, among other things, a patient's "mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). " 'Individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." *Id.*, ¶ 56.05(i).

Plaintiff plausibly alleges a violation of the CMIA. Plaintiff alleges that Dotdash, through its operation of VerywellHealth.com, acquired and disclosed his confidential medical information, including search queries and browsing activities relating to sexually transmitted diseases and other sensitive health conditions, to third party advertisers without authorization. FAC ¶¶ 1, 19, 24, 27-28. Notably, CMIA does

not require Plaintiff to allege that his medical information was actually viewed or exploited by third parties. FAC ¶ 307. It is sufficient at the pleading stage to allege that Dotdash transmitted Plaintiff's protected health information without proper authorization, thereby breaching its statutory obligations. *Id.* "Disclosure of personal health information to third-party online advertisers is sufficient to allege that medical information was viewed by unauthorized third parties under the CMIA." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *14 (W.D. Wash. Nov. 14, 2024). Plaintiff accessed Dotdash's health-focused website specifically to seek information regarding medical conditions, thereby establishing the requisite relationship for CMIA protection. FAC ¶¶ 1, 24, 27-28.

Defendant's argument that it is not a "provider of health care" under CMIA mischaracterizes the statutory definitions and ignores the broad protections afforded to consumers interacting with health-focused websites. MTD at 18-19. California law recognizes that entities maintaining or managing health-related information for consumers, even outside a traditional clinical context, may fall within CMIA's scope. See *J.M. Illuminate Education, Inc.*, 103 Cal.App.5th 1125, 1132-1133. Dotdash actively invites users to engage with its VerywellHealth platform to research medical conditions, pharmaceutical treatments, and personal health management strategies, bringing its activities well within CMIA's regulatory reach under Civil Code § 56.06. FAC ¶¶ 308-313. Defendant's suggestion that visitors need to create an account or receive prescriptions of medical treatment is plainly incorrect. MTD at 18-19; *See Cousin v. Sharp Healthcare*, 22-cv-2040-MMA-DDL, 702 F.Supp.3d 967, 972 (S.D. Cal. 2023) (denying motion to dismiss CMIA claim that was premised on users' input of search terms and other information on a publicly-facing website). Further, Plaintiff specifically alleges that "the website actively collects and disseminates users' health-related search data, making it functionally equivalent to a digital health platform. FAC ¶¶ 51, 104, and 216. Defendant prominently markets itself as a trusted medical

information source, boasting licensed doctors, medical reviewers, and evidence-based health advice." FAC ¶¶ 216–17.

Plaintiff also sufficiently pleads that Dotdash disclosed "medical information" as defined by CMIA. FAC ¶¶ 311-312. Plaintiff's communications included specific search queries and webpage interactions directly concerning diagnoses, symptoms, and treatments, thereby relating to Plaintiff's personal medical history. FAC ¶¶ 1, 24, 27-28, and 312. Courts have consistently held that the unauthorized disclosure of health-related search activity can constitute disclosure of protected "medical information" under the statute. *See Castillo*, *supra*, 2024 WL 4785136, at *13 (protected health information on pharmacy websites falls under CMIA protections even absent formal treatment). Another court in this district held:

> Patients alleged a plausible claim against medical billing provider based on violations of sections of California Confidentiality of Medical Information Act (CMIA) establishing a duty to preserve confidentiality and allowing a private right of action for negligent release, by alleging that provider posted patients' medical information on internet due to data breach purportedly caused by errant web page setting, making it searchable, findable, viewable, printable, copyable, and downloadable by anyone in the world with an internet connection, and that patients believed their information was viewed by unauthorized persons.

*Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898 (S.D. Cal. 2020).

Plaintiff has therefore stated a viable CMIA claim, and Dotdash's motion to dismiss this cause of action should be denied.

### D. CALIFORNIA'S PEN REGISTER AND TRAP AND TRACE LAW (PENAL CODE § 638.51)

Section 638.51(a) of the California Invasion of Privacy Act prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). CIPA defines

a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Penal Code § 638.50(b). It defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

To state a claim under Section 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. Cal. Penal Code § 638.51. *See Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Plaintiff plausibly alleges a violation of Section 638.51. Plaintiff alleges that Dotdash, through embedded spyware on VerywellHealth.com, unlawfully installed and used a "process" that captured addressing, routing, and signaling information from Plaintiff's communications without securing a court order, as required under California law. FAC ¶¶ 153-154, 156-161, 163-165, 182-190, and 193. Plaintiff's factual allegations fit precisely within the modern understanding of a "pen register" or "trap and trace device," as the spyware recorded Plaintiff's web browsing behaviors in real time, including the unique identifiers, search pathways, and communication signals transmitted from Plaintiff's device. *See Greenley*, 684 F. Supp. 3d at 1050 (reasoning "the Court cannot ignore the expansive language in the California Legislature's chosen definition," and "the plain meaning of a 'process'" surely includes "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'").

Dotdash's argument that internet-based tracking tools fall outside the scope of Section 638.51 is contrary to the plain statutory language. MTD at 21-22. The statute broadly defines a "pen register" to include any device or process that records addressing

or routing information, without limiting its application to traditional telephone systems. *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("[S]oftware may qualify as a pen register or trap and trace device under California law [§§ 638.50 and 638.51], at least at the motion to dismiss stage."). Multiple courts, including the Southern District of California, have recognized that web-based tracking mechanisms, such as cookies and fingerprinting technologies, can fall squarely within the reach of § 638.51 when they systematically capture user signaling data without consent. *See Greenley*, 684 F. Supp. 3d at 1050 (broad statutory language covers internet-based tracking processes); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp 3d 1072, 1076, (C.D. Cal. July 25, 2024) (pen register definition includes digital data gathering); *Mirmalek v. Los Angeles Times Commc'ns LLC,* No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (browser fingerprinting and tracking can violate Pen Register Law); *Shah v. Fandom, Inc.,* 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (website users adequately alleged that software "trackers" that website caused their web browsers to download were unauthorized "pen registers" within meaning of California Invasion of Privacy Act (CIPA)).

Dotdash also cannot invoke the statutory exemption for providers of wire or electronic communication services. Plaintiff does not allege — and Dotdash does not demonstrate — that Dotdash is a provider of electronic communication services within the meaning of the statute. Dotdash operates a health-focused publishing website, not a neutral communications infrastructure service. FAC ¶ 2.

Finally, Dotdash's fallback argument regarding consent fails for the same reasons discussed elsewhere: Plaintiff specifically alleges he did not consent to the interception, use, or redirection of his confidential communications. MTD at 29; FAC ¶ 15. At the motion to dismiss stage, these well-pleaded allegations must be accepted as true. *See, e.g.*, *India Price v. Carnival Corp*., 712 F. Supp. 3d 1347, 1357 (S.D. Cal. 2024) (Curiel, J.) (reasoning a defendant's "consent defense appears premature" at the motion to

dismiss phase "where the Court must take as true the Plaintiffs' well-pleaded factual allegations").

Plaintiff therefore sufficiently states a claim for violation of California's Pen Register and Trap and Trace Law, and Dotdash's motion to dismiss this claim should be denied.

**E. CALIFORNIA INVASION OF PRIVACY ACT (PENAL CODE § 631)**

California's Invasion of Privacy Act, Penal Code § 637.2, states that an individual injured by a violation of CIPA may bring a private action to enforce it. Cal. Penal Code § 637.2. *See* Cal. Penal Code § 637.2(a) (authorizing civil actions for "any person who has been injured by a violation of this chapter," including § 638.51, and permitting statutory or treble damages). The Trap and Trace Law is a part of CIPA. Cal. Penal Code § 638.51.

As discussed above, Plaintiff states a plausible claim under CIPA. Plaintiff alleges that Dotdash intercepted and disclosed his confidential electronic communications without his knowledge or consent, by deploying embedded spyware on VerywellHealth.com that captured Plaintiff's health-related searches in real time and transmitted them to third-party companies. FAC ¶¶ 24-25, 31-32, 153-154, 161-164, and 183-186. The factual allegations establish a surreptitious interception of communications in transit, satisfying the core elements of a § 631 violation.

Contrary to Dotdash's arguments, Section 631 applies to electronic communications over the internet. *See Greenley*, 684 F. Supp. 3d at 1051; *Zarif*, 2025 WL 1234567, at 18. Courts interpreting Section 631 have consistently recognized that while the first clause of the statute focuses on telephone wires, the second clause — prohibiting unauthorized attempts to learn the contents of communications over "any wire, line, or cable" — encompasses internet-based communications. *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, 20 (N.D. Cal. Sept. 26, 2013) ("the Court finds no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute should be imported to the

second clause of the statute.") As the court explained in *Greenley* "courts have concluded that the first clause does not apply to internet connections, while the second clause does." 684 F. Supp. 3d at 1051. Plaintiff's allegations fall squarely within this broader protective framework, and Dotdash's argument that Section 631 does not apply to electronic communications fails.

Dotdash's argument that its third-party tracking partners acted as mere "extensions" of its own website operations is also unavailing. MTD at 23-35. Plaintiff alleges that Dotdash's use of third-party spyware resulted in independent, contemporaneous interception and redirection of Plaintiff's communications to outside entities. FAC ¶¶ 24, 31, 96. (The *Zarif* court squarely rejected this "extension of the website" theory, reasoning that third-party trackers capable of analyzing and exploiting user data for their own benefit are not passive extensions but independent eavesdroppers. The court found that such conduct "extends beyond the ordinary function of a tape recorder" and is instead "more akin to an eavesdropper standing outside the door." (*Zarif*, 2025 WL 632318, at 19, quoting *Yoon v. Lululemon*, 549 F. Supp. 3d at 1081)). California courts have held that the involvement of separate entities capable of independently analyzing and exploiting intercepted data creates a triable issue under § 631 and precludes dismissal at the pleading stage. *See Greenley*, 684 F. Supp. 3d at 1051 (Section 631's second clause applies to internet communications); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (software providers can be independent eavesdroppers); *Javier v. Assurance IQ*, LLC, 649 F. Supp. 3d 891, 899–900 (N.D. Cal. 2023) (third-party tools not automatically considered extensions of the website owner); *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (privacy invasion occurs when unauthorized third party intercepts private communication). One court in this district recently held:

> [T]he Complaint alleges that Defendant violated CIPA and the California Constitution's right to privacy by allowing a third party to "secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use ... transcripts of Defendant's chat communications with unsuspecting website visitors – even

> when such conversations are private and deeply personal." (ECF No. 1 ¶ 12.) The Complaint alleges that "Defendant was secretly recording [class members'] chat conversations," *id.* ¶ 25, and Plaintiffs' "claims are typical of the class," *id.* ¶ 34. **The allegation that Defendant's data collection practices harmed Plaintiffs' interest in privacy is a "concrete injury sufficient to confer standing."**

*D'Angelo v. FCA US, LLC,* 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024) (emphasis added).

Defendant also takes issue with the contemporaneous requirement. It argues that Plaintiff alleges that "third parties are only collecting, storing, and processing the information *after* they receive it, not while in transit." MTD at 24, emphasis added. Not so. Throughout the pleading, Plaintiff alleges that "Defendant collected and transmitted user search queries, page visits, and browsing behaviors *in real-time* to third-party data analytics and advertising companies" FAC ¶ 19, emphasis added; D/Cipher "connects advertisers to consumers in key moments of intent — *as they make decisions, take action and pursue passions*" FAC ¶ 66, emphasis added; "D/Cipher's real-time interception of user interactions constitutes a wiretap under California law because it captures user inputs (search terms, page visits) *as they are entered into the website, before the content is fully loaded*" FAC ¶ 84, emphasis added; and "Google and the Spyware Companies used the sensitive medical information it intercepted in real time and *while in transit* from Defendant's Website into its marketing tools to fuel its targeted advertising service" FAC ¶ 189, emphasis added. These allegations are consistent with those in *Zarif*, where the court held that "interception in real time" using embedded tracking tools was sufficient to plead the required contemporaneity under CIPA. 2025 WL 632318, at 18.

Finally, Plaintiff's communications originated from California, satisfying CIPA's territorial application requirements. Plaintiff expressly alleges that he accessed VerywellHealth.com from his residence in California and engaged in private health-related searches from that location. FAC ¶¶ 28-30, and 108. This factual context places

the interception squarely within CIPA's geographic scope. Accordingly, Plaintiff adequately pleads a violation of California Penal Code § 631, and Dotdash's motion to dismiss this claim should be denied.

**F. THE FEDERAL WIRETAP ACT (18 U.S.C. § 2511)**

To plead a plausible claim under the Federal Wiretap Act, Plaintiff's complaint must demonstrate that Dotdash (1) without consent (2) intentionally intercepted the (3) contents of a communication (4) using a device. *See* 18 U.S.C. § 2511.

Plaintiff plausibly alleges a violation of the federal Wiretap Act, which prohibits unauthorized interception and disclosure of wire, oral, and electronic communications. Defendant intentionally intercepted Plaintiff's electronic communications concerning highly sensitive, health-related searches as those communications were in transit between Plaintiff's device and Dotdash's servers. FAC ¶¶ 24-25, 31, 153, and 161.

Dotdash submits that, as an initial matter, its surveillance scheme escapes the purview of federal and state wiretap laws because Plaintiff intended to communicate with Dotdash. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication."). Wiretapping requires a third party to the communication. *See Tanner v. Acushnet Co.*, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023).

But Plaintiff alleges that Dotdash, through embedded third-party tracking technologies, contemporaneously captured and redirected the substance of Plaintiff's communications — including search terms and interactions related to sexually transmitted diseases and other private medical matters — to third-party advertising platforms. FAC ¶¶ 25-28, 31, 153, 161, 163, 184-185, and 189. This interception of confidential medical information implicates the very core of the privacy protections the Wiretap Act was designed to safeguard. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014) (referrer headers that reveal substantive information qualify as "contents" under the Wiretap Act); *United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (distinguishing between record information and protected contents); *Noel v. Hall*,

568 F.3d 743, 749 (9th Cir. 2009) (interception occurs when contents are captured or redirected contemporaneously); *United States v. Christensen*, 828 F.3d 763, 774–75 (9th Cir. 2015) (intent element satisfied where interception was deliberate even if defendant unaware of illegality).

Furthermore, while some courts have construed software providers as "extensions" of the websites that employ them where the software "merely function[s] as a tape recorder," courts decline to adopt this construction where the software performs more than the ordinary function of a tape recorder. *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023) (quoting *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898 (N.D. Cal. 2023)). Software providers exceed the "ordinary function of a tape recorder" where, for instance, they "capture[ ], store[ ], and interpret[ ] real-time data." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021).

Here, Plaintiff alleges that Dotdash collects and processes Plaintiff's data to generate analytics, including his confidential search queries and user engagement. Plaintiff further alleges that Dotdash makes active use of those capabilities. *See* FAC ¶ 398 ("Defendant's actions intercepting these communications were done for the purpose of using the data for commercial gain, including targeting Plaintiff and Class Members for marketing or other purposes."). Because using the data for commercial gain extends beyond the function of a tape recorder, the "party to the communication" exception does not prevent Dotdash from being held liable under the Wiretap Act. Under settled law, a communication intercepted for the purpose of committing a tort — including invasion of privacy — does not fall within the one-party consent safe harbor. Users have a reasonable expectation of privacy in "unique search terms." *Brown v. Google LLC*, 685 F.Supp.3d 909, 941 (N.D. Cal. 2023).

Moreover, Plaintiff sufficiently pleads that the interceptions were intentional. Dotdash deliberately configured its website to embed spyware capable of capturing Plaintiff's health-related communications for the purpose of transmitting that

information to third parties for advertising and monetization.[2] FAC ¶¶ 24-25, 153-154, 161, 194-186, 189, and 193. Knowledge of the underlying technology's operation is not required at this stage; it is enough that Dotdash knowingly deployed tools designed to extract private user information.

> What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. *See, e.g.*, *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) ("At the pleading stage, however, interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.' ") (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020)). At this stage, intent has been adequately alleged.

*Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024).

Taken together, Plaintiff's allegations state a plausible claim for violation of the Wiretap Act, and Defendant's motion to dismiss this claim should be denied.

**G. CALIFORNIA'S COMPUTER DATA ACCESS AND FRAUD ACT (PENAL CODE § 502)**

The CDAFA imposes liability on whoever "[k]nowingly accesses and without permission takes ... any data from a computer." Cal. Penal Code § 502(c)(2). The statute allows an individual who "suffers damage or loss by reason of a violation" of the statute to bring a private civil action. Cal. Penal Code § 502(e)(1).

Plaintiff states a plausible claim under CDAFA. Plaintiff alleges that Dotdash knowingly accessed his computer, without permission, by embedding spyware

[2] This principle was recently reaffirmed by the Southern District of California in *Zarif v. Hwareh.com, Inc.*, where the court held that allegations of a pharmacy website's use of spyware to contemporaneously capture and transmit a user's health-related queries to Meta and other third parties stated a plausible violation of the Wiretap Act. The court rejected the defendant's argument that its use of common ad-tracking tools like Meta Pixel was lawful, explaining that tools configured to acquire user data "in real time" qualify as unlawful interception. 2025 WL 632318, at 14–15.

technologies on VerywellHealth.com that extracted data from Plaintiff's device and redirected his communications to third parties.[3] FAC ¶¶ 24-25, 153, 161, 184-186, 189, and 193. This unauthorized access and use of Plaintiff's private browsing activity constitutes a direct violation of CDAFA's prohibition on using data from a computer system without permission.

Dotdash's assertion that CDAFA only covers traditional hacking or circumvention of technical barriers misreads the statute. Courts interpreting § 502 have repeatedly held that unauthorized use of a computer system — including surreptitious collection of user communications and transmission to third parties — falls squarely within CDAFA's protections. MTD at 28, 29. Defendant's deployment of spyware that altered the function of Plaintiff's browser and redirected private communications is more than sufficient to meet the definition of unauthorized "access" and "use" under the statute. *See Greenley*, 684 F. Supp. 3d at 1049 (hidden tracking code on websites sufficient to show unauthorized use); *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1099 (N.D. Cal. 2015) (broad reading of "without permission" under CDAFA); *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (manipulation of user data for tracking supports CDAFA claims); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024) (allegations of persistent cookies and hidden collection devices constitute unauthorized access).

Plaintiff also adequately pleads resulting "damage or loss" under CDAFA. Plaintiff alleges loss of the economic value of his confidential data and emotional distress resulting from the unauthorized exploitation of his sensitive health-related information. FAC ¶¶ 35-37, 142, and 181. These allegations satisfy CDAFA's broad definition of compensable harm, which includes impairment of the integrity of computer systems and unauthorized use of valuable data. FAC ¶ 339.

[3] Plaintiff's reference in the First Amended Complaint to a spyware known as "Securly" was a scrivener's error.

Accordingly, Plaintiff sufficiently states a claim for violation of CDAFA, and Defendant's motion to dismiss this claim should be denied.

**H. FEDERAL COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)**

To state a claim under the CFAA, a plaintiff must show that a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value[.]" 18 U.S.C. § 1030(a)(4). Civil liability under § 1030(g) also requires that the offense caused a "loss to 1 or more persons during any 1-year period... aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Plaintiff adequately pleads a violation of this provision. He alleges that his personal device constitutes a "protected computer" used in interstate commerce. FAC ¶ 365. Plaintiff further alleges that he did not authorize the collection of his data and that Defendant exceeded any limited authorization by deploying invasive data-extraction tools and fingerprinting technologies. FAC ¶¶ 369–371. Through these means, Defendant obtained "a thing of value"—namely, Plaintiff's private health-related and behavioral data—for purposes of targeted advertising and commercial exploitation. FAC ¶¶ 372–373.

Defendant argues that Plaintiff fails to meet the CFAA's $5,000 statutory threshold. This is incorrect. The CFAA defines "loss" broadly to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). Courts have consistently held that the costs of investigating a breach and mitigating its effects may satisfy this requirement. See *United States v. Middleton*, 231 F.3d 1207, 1213 (9th Cir. 2000) (finding that costs incurred in responding to and assessing the effects of unauthorized access qualify as loss under the CFAA).

Here, Plaintiff alleges that Defendant's conduct caused the unauthorized collection and dissemination of sensitive personal information, necessitating

investigation and protective measures. FAC ¶¶ 25, 60, 63, 189, 193. These allegations, accepted as true at the pleading stage, support the reasonable inference that the intrusion resulted in compensable loss exceeding $5,000, particularly given the technical complexity of Defendant's tracking mechanisms and the sensitive nature of the data intercepted.

At minimum, Plaintiff should be permitted to proceed to discovery to determine the full scope and financial impact of Defendant's unauthorized access. Construing the complaint in Plaintiff's favor, the motion to dismiss the CFAA claim should be denied.

**I. FEDERAL STORED COMMUNICATIONS ACT (18 U.S.C. § 2701)**

The Electronic Communications Privacy Act ("ECPA") "addresses various areas of electronic surveillance including wire taps, tracking devices, stored wire and electronic communications, transactional records, pen registers, and trap and trace devices." *United States v. Espudo*, 954 F.Supp.2d 1029, 1032 (S.D. Cal. 2013). Title II of the ECPA is the Stored Communications Act, which "governs requests for access to stored records, including historical cell site data." *United States v. Cooper*, No. 13-CR-00693, 2015 WL 881578, at *4 (N.D. Cal. Mar. 2, 2015). It creates "civil liability for certain unauthorized access to stored communications and records." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012).

Under the SCA, there is a "private right of action against anyone who '(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *Id.* (quoting 18 U.S.C. § 2701(a)). An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). But these prohibitions "do not apply 'to conduct authorized (1) by the person or entity providing a wire or electronic communications service; [or] (2) by a user of that service with respect to a

communication of or intended for that user.' " *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057 (alteration in original) (quoting 18 U.S.C. § 2701(c)).

Plaintiff plausibly alleges a violation of the SCA. Plaintiff alleges that Dotdash intentionally accessed electronic communications stored temporarily in Plaintiff's browser during active sessions on VerywellHealth.com without authorization or in excess of authorization. FAC ¶¶ 31, 149-152, 161, 164, 193. Courts have recognized that temporary storage of electronic communications in a user's device, such as through browser caches or cookies, can fall within the SCA's definition of "electronic storage." *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 597–601 (9th Cir. 2020).

At the pleading stage, it is sufficient that Plaintiff alleges Dotdash acquired protected communications stored in electronic storage without lawful authorization. FAC ¶ 379. Plaintiff has pleaded that his personal communications with the VerywellHealth.com website, namely, his sensitive private medical search terms that he entered were accessed—not simply URLs. FAC ¶¶ 24-28; See *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 at 609 (holding that the SCA was not violated because only the browsing history of URLS and not personal communications were unlawfully accessed by the Defendant). In the instant case, personal communications were accessed—not simply browser histories. FAC ¶¶ 24-28.

Plaintiff has therefore plausibly stated a claim for violation of the SCA. To state a claim under the CFAA, a plaintiff must show that a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value[.]" 18 U.S.C. § 1030(a)(4). Defendant's motion to dismiss this claim should be denied.

**J. REQUEST TO STRIKE**

Defendant improperly submits three declarations in support of its motion to dismiss, attempting to introduce matters outside the pleadings. This is procedurally

improper under Rule 12(b)(6), which strictly limits the Court's consideration to the allegations within the four corners of the complaint, documents attached to or incorporated by reference into the complaint, and matters subject to judicial notice.

> A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986). But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b).

*Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001). None of the declarations attached by Defendant are referenced in or incorporated into the First Amended Complaint, nor are they the proper subject of judicial notice.

The Declaration of Joetta Gobell (ECF 21-2) attempts to introduce extrinsic facts concerning Dotdash's internal tracking practices, including assertions about how Dotdash structures its data collection systems. These facts are not referenced in the First Amended Complaint and directly contradict Plaintiff's well-pleaded allegations regarding the nature of the intercepted communications.

The Declaration of Sara Michael (ECF 21-3) likewise attempts to introduce extrinsic factual assertions, including a detailed discussion of Dotdash's purported policies for handling California users and claims about platform operations. These subjects are neither referenced in nor incorporated by the pleading, and they improperly attempt to contest Plaintiff's allegations regarding purposeful targeting and commercial activities in California.

Finally, the Declaration of James Vint (ECF 21-4) offers expert-style opinions disputing whether Plaintiff's IP address and associated browsing activities could personally identify him. This again raises factual disputes outside the four corners of the pleading regarding the sensitivity and identifiability of the transmitted data — issues reserved for summary judgment or trial, not for resolution at the pleading stage. Because none of these declarations are referenced in the Complaint, incorporated by reference, or subject to judicial notice, they must be struck or disregarded under well-established Ninth Circuit precedent. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief.").

Where a defendant relies on external evidence to support a Rule 12(b)(6) motion, the Court must either exclude the material and decline to consider it, or convert the motion to one for summary judgment under Rule 56 and afford the plaintiff a reasonable opportunity for discovery. *See* Fed. R. Civ. P. 12(d). Defendant has made no showing that conversion is appropriate, nor has Plaintiff been afforded an opportunity for discovery necessary to respond to any purported factual disputes raised in the declarations.

Accordingly, Plaintiff respectfully requests that the Court strike the declarations submitted in support of Defendant's motion, or, in the alternative, disregard them entirely when ruling on the motion under Rule 12(b)(6). These declarations improperly attempt to create factual disputes, which courts uniformly hold must be resolved at summary judgment or trial, not at the dismissal stage.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. Plaintiff has plausibly alleged standing under Article III by asserting concrete, particularized injuries stemming from the unauthorized interception and disclosure of sensitive, health-related communications. Plaintiff's First Amended Complaint states viable claims for relief under the Wiretap Act, the Stored Communications Act, the California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, the California Consumer Privacy Act, and the California Computer Data Access and Fraud Act.

Defendant's arguments improperly attempt to dispute well-pleaded facts, misapply controlling legal standards, and misconstrue the scope of the statutes invoked. At this early stage, Plaintiff is entitled to the presumption that his factual allegations are

true, and dismissal is inappropriate where the pleadings present plausible claims. In the alternative, if the Court finds any technical deficiency in Plaintiff's allegations, Plaintiff respectfully requests leave to amend under Rule 15(a) to cure any such deficiency.

Respectfully submitted,

**Swigart Law Group**

Date: May 19, 2025

By: *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiffs
and the Putative Class