UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER MAGHONEY, individually and on behalf of all others similarly situated, | Case No.: 24-cv-2394-AJB-BJW |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | **(Doc. No. 21)** |
| DOTDASH MEREDITH, INC., | |
| Defendant. | |

Before the Court is Defendant Dotdash Meredith, Inc.'s ("Dotdash") Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion").[1] (Doc. No. 21.) Plaintiff Tyler Maghoney ("Plaintiff") opposed the Motion (Doc. No. 23) and Dotdash replied. (Doc. No. 24). Subsequently, Dotdash filed three notices of supplemental authority in support of its Motion. (Doc. Nos. 29; 31; 33.) Plaintiff also filed a notice of supplemental

---

[1] Plaintiff and Defendant both recognize that Plaintiff initially named Dotdash Media, Inc. as Defendant in this action, but Dotdash Media, Inc. was renamed Dotdash Meredith, Inc. in March 2024. (Doc. Nos. 17 at 3 n.1; 21-1 at 11 n.1.) For continuity, and without making any legal finding, the Court refers to Defendant as Dotdash Meredith, Inc.

1

authority in support of his opposition to the Motion. (Doc. No. 30.) For the reasons stated herein, the Court **GRANTS** Dotdash's Motion.

## I.      BACKGROUND

### A.      Procedural Background

Plaintiff filed his initial class action complaint on December 19, 2024, and filed the operative First Amended Complaint ("FAC") on March 26, 2025. (*See* Doc. Nos. 1; 17.) The FAC alleges the following nine causes of action against Dotdash: (1) Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (2) Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (3) Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10; (4) Invasion of Privacy under California's Constitution; (5) Violation of the California Computer Data Access and Fraud Act ("CDAFA"); (6) Violation of California Penal Code § 502 for use of a pen register or trap and trace device, Cal. Penal Code § 638.51; (7) Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (8) Violation of the Stored Communications Act, 18 U.S.C. § 2710; and (9) Violation of the Federal Wiretap Act, 18 U.S.C. § 2511. (*See* Doc. No. 17.) Dotdash moves to dismiss the FAC in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### B.      Factual Background

Plaintiff brings this invasion of privacy class action lawsuit against Dotdash on behalf of all California residents who accessed Dotdash's website, www.verywellhealth.com (the "Website"). (Doc. No. 17 ¶ 1.) Plaintiff alleges that the Website covers "more than 500 medical topics" and "boasts 320 million visitors each year." (*Id.* ¶ 2.) Plaintiff contends Dotdash uses tracking technologies to intercept and monetize sensitive user data, including the users' health-related searches typed into the Website. (*Id.* ¶¶ 1, 19, 27–28.) Specifically, Plaintiff claims Dotdash used tracking technologies that collected Plaintiff's confidential information and transmitted it to third parties without his consent. (*Id.* ¶¶ 31, 49, 51, 59–71, 92–95.)

Plaintiff visited the Website on or about December 6, 2024, and December 13, 2024. (*Id.* ¶ 28.) During those visits, Plaintiff typed specific search terms into the search bar related to symptoms, contraction, and the treatment of chlamydia. (*Id.* ¶¶ 27–30). Plaintiff also performed searches related to genital warts and the treatment of Sexually Transmitted Infections. (*Id.*) Plaintiff alleges he did not receive any disclosures about the collection of his data and reasonably expected his searches to remain private. (*Id.* ¶¶ 32–33.)

Plaintiff claims Dotdash systematically intercepted, recorded, and disclosed Plaintiff's private information to third-parties. (*Id.* ¶¶ 24, 31.) This private information included Plaintiff's search queries related to his sensitive health information, page navigation history, and metadata associated with his site visit, including his Internet Protocol ("IP") address and device identifiers. (*Id.*) According to the FAC, Plaintiff's personally identifiable search terms, and activity regarding his personal sexual health, were transmitted to Google Analytics, DoubleClick, and other third-party advertisers. (*Id.* ¶ 25.) Those entities then profiled Plaintiff's health-related interests for targeted advertising and monetization. (*Id.*)

Plaintiff alleges that Dotdash uses a proprietary advertising platform, D/Cipher, which intercepts search terms, page navigation history, and metadata including IP addresses and device identifiers, then transmits that information to third-party entities without users' consent. (*Id.* ¶¶ 31–32, 51.) Plaintiff claims that D/Cipher is an advanced fingerprinting and profiling mechanism designed to circumvent browser privacy protections and track users across sessions and properties. (*Id.* ¶¶ 31, 51, 65–83.)

The FAC alleges Dotdash violates privacy laws and engages in unlawful conduct that exposes Plaintiff and potential class members to risks of identity theft and digital profiling. (*Id.* ¶¶ 33–36.) Plaintiff further contends that Dotdash failed to disclose its data collection and sharing practice, violating Plaintiff's right of privacy related to his sensitive health related information. (*Id.* ¶¶ 32, 241, 299, 317, 385.) Plaintiff claims that visiting Dotdash's website caused him "emotional distress and anxiety over how his sensitive medical-related searches have been exploited for commercial gain." (*Id.* ¶¶ 25, 37.)

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338. To establish standing, a plaintiff must demonstrate the "irreducible constitutional minimum" of: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stage of litigation.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561).

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010) (noting that "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"). Such a motion can be facial or factual in nature. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373

4

F.3d at 1039. In resolving such an attack, unlike a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). However, in the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the opposing party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The disputed facts related to subject matter jurisdiction should be treated in the same way as one would adjudicate a motion for summary judgment. *Id.*

**B.    Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); s*ee Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly,

"conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

## C. Motion to Stike

Federal Rule of Civil Procedure 12(f) permits a court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977)). The "'immaterial' [i]s that which has no essential or important relationship to the claim for relief or the defenses being plead." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (citation and internal quotation marks omitted). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1089 (9th Cir. 2025) (citation omitted). "Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1004 (S.D. Cal. 2021) (quoting *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015)).

6

## III.   DISCUSSION

### A.   Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

Dotdash moves to dismiss the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) arguing Plaintiff lacks Article III standing to bring any of his nine causes of action. (Doc. No. 21-1 at 15.) Plaintiff opposes the Motion arguing he has "allege[d] concrete and particularized injuries sufficient to establish Article III standing." (Doc. No. 23 at 11.)

To establish Article III standing, a plaintiff must show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of (i.e., traceability), and (3) a likelihood that the injury will be redressed by a favorable decision (i.e., redressability). *Lujan*, 504 U.S. at 560. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 185 (2000). This is true "whether it be injunctive relief, damages or civil penalties." *Bates v. UPS,* 511 F.3d 974, 985 (9th Cir. 2007). In the absence of standing, there is no subject matter jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546–47 (1986) (citing *Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Dotdash argues that the FAC "fails to identify any cognizable harm" (Doc. No. 21-1 at 15.) Plaintiff counters that he has alleged concrete and particularized injuries because he has adequately alleged "[t]he unauthorized interception and disclosure of Plaintiff's highly sensitive health-related search activity." (Doc. No. 23 at 11.) Plaintiff contends such an allegation "constitutes disclosure of private information and intrusion upon seclusion, traditional harms long recognized at common law." (*Id.*) The FAC alleges Plaintiff suffered four categories of purported injury: (1) invasion of privacy (Doc. No. 17 at ¶ 142), (2) increased risk of identity theft and digital profiling (*id.* at ¶ 35), (3) information injury through deprivation of control over the dissemination of private online activities (*id.* at ¶ 36), and (4) emotional distress and anxiety (*id.* at ¶ 37).

24-cv-2394-AJB-BJW

Bare statutory violations are insufficient to establish injury in fact, but lawmakers may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate" to confer standing. *Lujan*, 504 U.S. at 578. By enacting CIPA, the California legislature "codif[ied] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020); *see also* Cal. Penal Code § 637.2(a) (providing a private right of action for individuals "who [have] been injured" by a CIPA violation). But the codification of this right "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *id.* at 427 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

### 1.     Invasion of Privacy

Dotdash's motion to dismiss argues Plaintiff fails to plead the "threshold issues" for California's common law on invasion of privacy—i.e., "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." (Doc. No. 21-1 at 16.)

Disclosure of private information is a concrete injury. *TransUnion*, 594 U.S. at 425; *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023) (noting that invasion of privacy is "an injury identified by the Supreme Court as concrete"). However, to say that a privacy injury *can* be concrete is not to say that the alleged privacy injury here *is* concrete. Rather, courts "make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014)). "To survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Mikulsky*, 682 F. Supp. 3d at 864 (quoting *Byars v. Sterling*

8

*Jewelers, Inc.*, No. 22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023)).

Courts have held that there is no legally protected privacy interest in an IP address. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit . . . ."); *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025). And a person generally "has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter v. United States*, 585 U.S. 296, 307 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)). That remains true "even if the information is revealed on the assumption that it will be used only for a limited purpose . . . ." *United States v. Miller*, 425 U.S. 435, 443 (1976). When internet users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process. *See Forrester*, 512 F.3d at 510. Therefore, "IP addresses are . . . voluntarily turned over in order to direct the third party's servers." *Id.* Accordingly, no reasonable expectation of privacy attaches to IP addresses. *Id.*

Here, Plaintiff alleges that his personal health-related search queries were intercepted and shared with third-party advertisers. (Doc. No. 17 ¶ 25.) However, it is unclear how Plaintiff became aware of the sharing of this information. Plaintiff does not allege anyone directly contacted him related to his searches. Or that his searches were made publicly visible. Plaintiff does not allege that his name, postal address, email address, telephone number, or any other personal identifiers were collected. And Plaintiff does not allege any of his searches were directly linked to his name or other personally identifiable information. At most, the data was associated with an IP address and other metadata (*id.* ¶ 31), which does not automatically qualify as personally identifiable information. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1058 (N.D. Cal. 2012) (finding

9

"Plaintiffs have failed to allege that any Defendant linked the gathered information to a particular user").

Moreover, Plaintiff merely *searched* sensitive health related terms. As Dotdash argues, "[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches into an informational health website." (Doc. No. 21-1 at 23.) The Court agrees. Dotdash's website is not a patient portal. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes— information that unequivocally provides a window into an individual's personal medical history.") And nothing about Plaintiff's searches indicates those searches were tied to his personal medical history. *See id.* ("The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history."). Plaintiff's conclusory allegations of harm are far from the "highly offensive" interferences or disclosures that were actionable at common law. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Accordingly, Plaintiff's searches on the Website do not constitute a legally protectable privacy interest, and the alleged dissemination of that search history cannot establish the concrete injury required for Article III standing. *See id.*

### 2.   Future Harm

Plaintiff contends that there is a "increased risk of identity theft and digital profiling where third parties now associate Plaintiff's identity with highly sensitive health-related searches." (Doc. No. 17 ¶ 35). Dotdash avers that the alleged increased risk of identity theft is speculative. (Doc. No. 21-1 at 24–25.)

A mere risk of future harm is not sufficient for Article III standing. *TransUnion*, 594 U.S. at 437–38 (holding that "the risk of future harm" is "too speculative to support Article III standing"). The future harm must be certainly impending; an allegation of future risk will not suffice as a concrete injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.")

Here, Plaintiff does not allege that he was the victim of identity theft. Plaintiff merely alleges a speculative future risk of identity theft and digital profiling. (*See* Doc. No. 17 ¶ 35 ("As a result of this unlawful conduct Plaintiff has been subject to increased risk of identity theft and digital profiling."). The Supreme Court has made clear that such allegations are insufficient to establish an injury in fact. *TransUnion*, 594 U.S. at 437–38. Accordingly, Plaintiff cannot rely on the risk of future harm as a basis for establishing a concrete injury under Article III.

### 3.    Informational Injury

Plaintiff alleges he suffered informational injury because he was "deprived control over the dissemination of his private online activities." (Doc No. 17 ¶ 36.) However, Plaintiff does not cite any cases which have recognized such an "informational harm."

In opposition, Dotdash argues Plaintiff's alleged informational injury does not have any common law analogue, nor is it recognized as a cognizable injury. (Doc. No. 21-1 at 25.) The Court agrees.

In *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), the Ninth Circuit recognized an informational injury when a plaintiff was *deprived* of information it was entitled. The *Wilderness* court went on to discuss the history of informational injury:

> The notion of an informational injury serving as an injury-in-fact sufficient for standing can be traced to *Federal Election Commission v. Akins,* 524 U.S. 11 (1998). In that case, a group of voters challenged the Federal Election Commission's refusal to treat the American Israel Public Affairs Committee as a "political committee," thus requiring disclosure of certain information about campaign-related activities under the Federal Election Campaign Act. *Akins,* 524 U.S. at 15–16. The Court held that the voters had suffered an injury sufficiently concrete and particularized to give them standing in that they were denied information that the Federal Election Campaign Act of 1971 required be made public. *Id.* at 21.

*Id.* at 1258.

11

24-cv-2394-AJB-BJW

The Ninth Circuit has "repeatedly recognized that failure to provide statutorily required information can give rise to Article III injury on the part of private plaintiffs." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 833 (9th Cir. 2021). When a statute provides a right to information, the deprivation of which "result[s] in an informational harm," violation of the statute gives rise to a cognizable "informational" injury. *Wilderness*, at 1260; *see Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 419–420 (9th Cir. 2020) (finding informational injury when a tribal health foundation challenged amendments to a tribal health consortium's amendment to its code of conduct); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (recognizing informational injury in a suit alleging false product labeling).

Based on the foregoing, the Court finds Plaintiff's alleged informational injury does not have a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *Spokeo*, 578 U.S. at 341. Thus, this harm does not constitute a concrete injury sufficient to confer Article III standing.

### 4.    Emotional Distress

Finally, Plaintiff claims he suffered "concrete emotional distress, including anxiety." (Doc. No. 17 ¶ 37). Dotdash contends "that Plaintiff's unadorned allegation of 'anxiety' fails to include the necessary detail or specificity that can suffice as injury-in-fact." (Doc. No. 21-1 at 26.)

Plaintiff's emotional distress allegations fall short of showing "an injury in fact that is concrete, particularized, and actual." *TransUnion*, 594 U.S. at 423. Although "many courts have found that emotional distress may constitute an injury-in-fact for purposes of standing," *Davis v. Astrue*, 874 F. Supp. 2d 856, 863 (N.D. Cal. 2012), the allegations in the FAC are conclusory at best, failing to set forth any information or detail regarding Plaintiff's alleged emotional distress. *See, e.g.*, *Campbell v. Anniemac Home Mortg.*, No. cv-1608795-ABA-JWX, 2017 WL 8180578, at *2 (C.D. Cal. Feb. 23, 2017) (finding plaintiff's conclusory allegations of "emotional distress, humiliation, and embarrassment" insufficient to show genuine injury); *Burnthorne-Martinez v. Sephora USA, Inc.*, No.

16-cv-02843-YGR, 2016 WL 6892721, at *6 (N.D. Cal. Nov. 23, 2016) (dismissing negligent violation claim when allegations of emotional distress damages were general and conclusory); *Dewi v. Wells Fargo Bank*, No. CV-12-2891-ABC-SHX, 2012 WL 10423239, at *8 (C.D. Cal. Aug. 8, 2012) ("[A] plaintiff 'must support her claim for pain and suffering with something more than her own conclusory allegations, such as specific claims of genuine injury.'"). Accordingly, Plaintiff does not sufficiently allege emotional distress as a concrete injury.

For the reasons stated, Plaintiff has not met his burden in showing that he has suffered an injury-in-fact, thus, he lacks standing to bring this action. *See Loritz v. U.S. Court of Appeals for the Ninth Circuit*, 382 F.3d 990, 992 (9th Cir. 2004) ("[A] plaintiff filing an action in federal court has the burden of alleging specific facts sufficient to satisfy the standing elements."). Dotdash's Motion to Dismiss pursuant to Rule 12(b)(1) is **GRANTED**. (Doc. No. 21.)

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Because Plaintiff does not have standing to pursue his claims, this Court lacks subject matter jurisdiction to hear the case. Accordingly, the Court is without jurisdiction to consider Dotdash's 12(b)(6) motion. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter is inflexible and without exception, for jurisdiction is power to declare the law, and without jurisdiction the court cannot proceed at all in any cause.") (cleaned up).

### C. Motions to Strike

#### 1. Dotdash's Request to Strike Portions of the FAC

Dotdash seeks to strike paragraphs 89–101 of the FAC, titled "Objection to the Declaration of James Vint," arguing the allegations are "impermissibly immaterial, irrelevant, and do not belong in Plaintiff's operative pleading." (Doc. No. 21-1 at 41–42.) The Court agrees.

Paragraphs 89–101 are dedicated solely to Plaintiff's objections to the Declaration of James Vint in Support of Dotdash's originally filed motion to dismiss. (*See* Doc. No. 17

24-cv-2394-AJB-BJW

¶¶ 89–101.) Dotdash filed its initial motion to dismiss on March 12, 2025. (Doc. No. 15.) The declaration of James Vint was attached to that motion to dismiss. (Doc. No. 15-3, Vint Declaration.) Platiniff subsequently filed the FAC, thereby mooting the motion to dismiss. (Doc. Nos. 17; 18.) Paragraphs 89–91 of the FAC are not factual allegations regarding Plaintiff's experience with the Website, injuries, or claims, but rather seems to be a peremptory objection to a moot pleading. However, because the FAC is dismissed for the reasons discussed above, Dotdash's request to strike these paragraphs is **DENIED AS MOOT**.

### 2.   Plaintiff's Request to Strike Dotdash Declarations

In Plaintiff's opposition to the motion to dismiss, he seeks to strike the three declarations Dotdash filed in support of its motion. (Doc. No. 23 at 33.) Plaintiff argues that it is improper under Federal Rule of Civil Procedure 12(b)(6) to introduce matters outside of the pleadings. While that is true, Dotdash also moves to dismiss the FAC under 12(b)(1), which permits the filing of extrinsic evidence when there is a factual attack. *See Safe Air For Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."). Thus, the Court **DENIES** Plaintiff's request to strike the declarations. However, the Court only relies on the declarations to the extent they are relevant to the analysis under Rule 12(b)(1).

## IV.   CONCLUSION

For the foregoing reasons the Court **ORDERS** as follows:

1.   Dotdash's Motion to Dismiss Motion under Rule 12(b)(1) is **GRANTED**. The Court dismisses the First Amended Complaint **WITH LEAVE TO AMEND**.

2.   Dotdash's request to strike portions of the First Amended Complaint is **DENIED AS MOOT**.

3.   Plaintiff's request to strike the declarations attached to Dotdash's motion to dismiss is **DENIED**.

14

4.      Should Plaintiff choose to do so, he may file a Second Amended Complaint curing the deficiencies noted herein no later than **March 9, 2026**. Pursuant to Local Civil Rule 15.1.c, any amended pleading filed after a motion to dismiss is granted, "must be accompanied by a version of that pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how that pleading differs from the previously dismissed pleading."

5.      Dotdash must file a responsive pleading no later than **March 30, 2026**.

**IT IS SO ORDERED.**

Dated:  February 23, 2026

_____
Hon. Anthony J. Battaglia
United States District Judge

24-cv-2394-AJB-BJW